UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| ELAINE HENDRIX, *Plaintiff,* v. OLYMPIA ENTERTAINMENT, INC. *and* DETROIT TIGERS, INC. *Defendants.* | CASE NO.: JURY TRIAL DEMANDED |

**COMPLAINT AND JURY DEMAND**

Plaintiff Elaine Hendrix ("Plaintiff"), for her Complaint against Defendants Olympia Entertainment, Inc. and Detroit Tigers, Inc (collectively, "Defendants"), alleges as follows:

### I.   INTRODUCTION

Plaintiff was the Vice President of Public Affairs and Strategic Planning for Detroit Tigers, Inc. ("Tigers"), a subsidiary of Olympia Entertainment, Inc. ("Olympia"), and enjoyed a successful career with the Tigers for nearly 21 years when she was suddenly and unexpectedly terminated on September 20, 2020.

Plaintiff was the first African American and woman Vice President hired by the Tigers and received glowing performance reviews annually until 2020. Indeed, under the pretext of one poor performance review and a reduction in workforce through which she was the only Vice

1

President terminated, she was offered a severance package that paled in comparison to those offered to similarly situated white men separated from Defendants.

Based on the treatment she suffered while employed by Defendants, Plaintiff asserts race discrimination under 42 U.S.C. § 1981 ("Section 1981"); race and sex discrimination under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII");  age discrimination under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA"); and race, sex, and age discrimination under Elliot-Larsen Civil Rights Act, MCL § 37.2101 *et seq.* ("Elliot-Larsen").

## II.    JURISDICTION AND VENUE

1. Plaintiff's claims under Title VII, ADEA and Section 1981 present federal questions over which this Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343.

2. This Court has supplemental jurisdiction over Plaintiff's Elliot-Larsen claims under 28 U.S.C. § 1367.

3. Venue is proper in the Eastern District of Michigan under 28 U.S.C. § 1391(b) because the events giving rise to Plaintiff's claims alleged herein occurred in the Eastern District of Michigan.

## III.    THE PARTIES

4. Plaintiff is a Native Detroiter and continues to maintain her Detroit residency. She is also the former Vice President of Public Affairs and Strategic Planning for the Tigers; thus, she is an employee as defined by the statutes cited herein.

5. Defendant Olympia is a Michigan corporation, an employer within the meaning of the statutes cited herein and is generally engaged in the sports and entertainment industries.

6. Defendant Tigers is a Michigan corporation, an employer within the meaning of the statutes cited herein and is a Major League Baseball team based in Detroit.

7. Defendants are subject to this Court's jurisdiction and may be served with process through their registered agent.

## IV. ADMINISTRATIVE PROCEEDINGS

8. Plaintiff filed a timely Charge of Discrimination with the Michigan Department of Civil Rights, assigned Case Number 614857, and the Equal Employment Opportunity Commission ("EEOC"), assigned Charge Number 23A-2021-00298, alleging race, sex, and age discrimination.

9. On February 21, 2023, Plaintiff received her Notice of Right to Sue from the EEOC, attached hereto as Exhibit 1.

10. All administrative prerequisites for filing suit on Plaintiff's Title VII and ADEA claims have been satisfied.

## V. FACTUAL BACKGROUND

11. On February 22, 1999, Plaintiff was hired by the Tigers as the Vice President of Planning and Research. In this role, Plaintiff assisted the Tigers in transitioning from the Tigers Stadium, located on Michigan Avenue, to Comerica Park, located on Woodward Avenue, among other things.

12. Around 2002, Plaintiff transitioned to Vice President of Public Affairs and Strategic Planning for the Tigers. Plaintiff served in this role dutifully until her discriminatory and untimely termination in September 2020.

13. As Vice President of Public Affairs and Strategic Planning for the Tigers, Plaintiff's role was varied and multi-faceted. For example, she created, organized, and executed

a more robust and state-wide renown event known as "The Winter Caravan." She also successfully organized and executed the Memorabilia Program and the Ticket Donation Program, ensuring that coveted Tigers memorabilia and tickets went to local Detroiters, senior citizens, youth, people of color, and non-profits. Indeed, both Programs, led by Plaintiff, became a model for Major League Baseball.

14. Based on Plaintiff's exemplary professional reputation, strong community ties, and her successful execution on the above-referenced events and programs, the Tigers became a bastion of community outreach and engagement during the relevant period.

15. As a result, Plaintiff was a key contributor to the success of the Tigers, having regularly received "Exceeds Expectations" on her annual performance reviews until she received her 2019 review in Spring 2020 – mere months before she was terminated.

16. In July 2019, Olympia hired Ms. Emily Neenan as Chief Marketing Officer and Senior Vice President of Sports and Entertainment for Olympia. Based on information and belief, Ms. Neenan is a white woman and was 39- or 40-years-old at the time she was hired. Plaintiff, a Tigers employee, reported directly to Ms. Neenan, an Olympia employee.

17. Although Plaintiff and Ms. Neenan had scheduled weekly 1:1 meetings, Ms. Neenan was often unavailable to meet with Plaintiff. When they did meet, Plaintiff would request feedback and provide updates on her projects and matters. Ms. Neenan never communicated her expectations to Plaintiff or provided constructive feedback. What is more, Ms. Neenan never communicated her dissatisfaction with Plaintiff's work performance.

18. In Spring 2020, for the first time during her tenure with the Tigers, Plaintiff received a "Does Not Meet Expectations" for her 2019 annual performance review. Notably, Ms.

Neenan was unable to meet with Plaintiff in-person to issue the review or even discuss it by phone with Plaintiff.

19.     Moreover, between 2019 and 2020, Ms. Neenan began constructively demoting Plaintiff, usurping Plaintiff's work duties and responsibilities, refusing to provide Plaintiff any guidance regarding work expectations, and failing to offer resources Plaintiff needed to perform her job (other resources that were provided to similarly situated white employees and resources to which Plaintiff had been previously provided during her 20-year tenure).

20.     All this was done either at Defendants' direction or with Olympia's knowledge, in a systematic effort to force Plaintiff to quit her job.

21.     The Tigers is a wholly owned subsidiary of Olympia, which also operates the Detroit Red Wings and Fox Theatre.

22.     Olympia treated the Tigers, Detroit Red Wings, and Fox Theatre as a "family of companies" and their employees report to upper-level management at Olympia.

23.     In September 2020, Ms. Neenan and a Human Resources representative contacted Plaintiff and informed her that her role was being removed pursuant to a reduction in workforce. During the same conversation, they offered Plaintiff 21 weeks of pay – a mere one week for each year of her tenure with the Tigers – and asked her to sign a waiver, which would bar Plaintiff from bringing any lawsuit against the Tigers. The Tigers insisted that she return the document as quickly as possible and failed to provide her with the applicable statutory notices and disclosures.

24.     Notably, the Tigers made this paltry offer to Plaintiff even though they recently had offered other similarly situated white men severance packages in the amount of their annual

5

salaries. The Tigers only offered Plaintiff a 21-week severance package because she was a 64-year-old Black woman.

25. On September 20, 2020, under the pretext of a reduction in workforce, Plaintiff was the only Vice President eliminated by the reduction in workforce.

## COUNT I

### 42 U.S.C. § 1981- RACE DISCRIMINATION

26. Plaintiff restates and realleges the allegations of paragraphs 1 through 25.

27. Defendants engaged in race discrimination by manufacturing a baseless negative performance evaluation and workforce reduction, based on the relative disparate races of Plaintiff and her similarly situated white counterparts.

28. Defendants' actions were in willful disregard of Plaintiff's federally protected rights to be free of race discrimination in employment.

29. As a direct and proximate result of Defendants' illegal acts as previously stated, Plaintiff has suffered economic damages, non-economic damages, both present and future.

## COUNT II

### TITLE VII- RACE AND SEX DISCRIMINATION

30. Plaintiff restates and realleges the allegations of paragraphs 1 through 29.

31. As a Black woman, Plaintiff is a member of a protected class on the basis of race and sex.

32. Defendants discriminated against Plaintiff as described above.

33. Defendants' actions were taken with a willful and wanton disregard of Plaintiff's rights under Title VII.

6

34. As a direct and proximate result of Defendants' illegal acts as previously stated, Plaintiff has suffered economic damages, non-economic damages, both present and future.

## COUNT III

## THE ADEA – AGE DISCRIMINATION

35. Plaintiff restates and realleges the allegations of paragraphs 1 through 35.

36. Plaintiff was employed by Defendants at all relevant times.

37. Plaintiff's age was a factor in Defendants' decision to terminate Plaintiff's employment.

38. As a proximate result of Defendants' illegal acts as previously stated, Plaintiff has suffered economic damages, non-economic damages, both present and future.

## COUNT IV

## VIOLATION OF ELLIOTT-LARSEN – AGE, SEX, AND RACE DISCRIMINATION

39. Plaintiff restates and realleges the allegations of paragraphs 1 through 38.

40. Defendants violated the Michigan Elliott-Larsen Civil Rights Act ("Elliott-Larsen") when they terminated Plaintiff due to her race, sex, and age.

41. Defendants' actions were in willful disregard of Plaintiff's rights under the Elliott Larsen.

42. As a proximate result of Defendants' illegal acts as previously stated, Plaintiff has suffered economic damages, non-economic damages, both present and future.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all claims and issues so triable.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff requests that this Honorable Court grant the following relief:

A. Enter judgment in favor of the Plaintiff and against Defendants for violation of Plaintiff's rights under § 1981, Title VII, the ADEA, and Elliott Larsen;

B. Declare that the actions of the Defendants constituted unlawful discrimination;

C. Award Plaintiff compensatory damages;

D. Award Plaintiff exemplary damages;

E. Award Plaintiff punitive damages;

F. Award Plaintiff reasonable attorney's fees, costs, and interests; and

G. Award such other relief as this Court deems just and proper.

Dated: May 17, 2023

Respectfully Submitted,

/s/Jehan Crump-Gibson
Jehan Crump-Gibson, Esq.
Counsel for Plaintiff
Great Lakes Legal Group PLLC
One Towne Square, Ste. 1835
Southfield, MI 48076
Telephone: (248) 395-3699
Email: jehan@gllegalgroup.com